All right. For the appellant, I'm going to let you pronounce your name because I'll probably mess it up. May it please the court, my name is Niles Illick and I represent Kenneth Chasteen. We present a single issue this morning and we ask the court whether Terry authorized the initial stop. The question presented here is a legal issue. I don't think most of the facts in this case are ultimately going to be in dispute. So we're here today to ask the court to review the district court's legal conclusions. When you say initial stop, the police had the right to be at a 7-Eleven parking lot, correct? Then they had fine to plain view see the gun. When did the seizure occur after which the statements you're challenging would make relevant whether they had reasonable suspicion? Thank you, Judge Higginson, and I think that gets to the crux of the case. And I think I have to step back just a little bit more and it goes to Officer Bowen, of course, and him calling the Carrollton Police Department saying someone followed me into the apartment where I'm a security guard. He went to the hideaway next door and then he drove away quickly and then the CPD starts looking for him. They recognize he's at the 7-Eleven. They get there and they form a cordon, what I've called a cordon, it's sort of a horseshoe with officers and then with the minute he walks out of the 7-Eleven. Not when one of them steps between him and his car or is that not relevant anyway? Well, I think we have to look to the district court's opinion and when we look to the district court's opinion, I think, well... Because they could go up and ask him questions, right? They see a gun... Sure, you could have a consensual encounter, but I think everyone agrees and I think that my esteemed counsel on the other side will get up and tell you, maybe I'm wrong, but that this is not a consensual encounter. That when he gets up there and he walks out of 7-Eleven, if he had turned and walked away from those police officers, he was not free to do that. He would have been grabbed and handcuffed and, you know, brought into more of custody. And why was... I mean, the big question you were going to get to is why didn't they have reasonable suspicion to do the sort of Terry questioning based on Bones saying absolutely he was speeding? So, if we're going to say that the Terry stop occurred because of Bones saying he was speeding, then I think they had reasonable suspicion. But I don't think that's what the district court found. The district court found that there was reasonable suspicion based on a claim of driving while intoxicated. Now... Well, didn't he supplement that, though, the maybe not exclusively. I'd have to look at it again on speeding. And Judge Southwick, I think you've come to the hardest part of this case for us. He absolutely does say that it is on reasonable suspicion of DWI and speeding in the order on the motion for reconsideration. Makes me wish I hadn't filed it, of course. But sometimes, you know, be careful what you ask for because you might get it. But what he says, what the district court said before it got to that point, and forgive me, I'm not going to read it to the court, but it's a short, it's a short opinion. Here it is. The court reconsiders Chasteen's motion, but the decision remains unchanged. That's at ROA 176. So if the decision... Just the decision on how much to suppress? Excuse me? Seems like the decision is whether to suppress or not. Well... That remains unchanged. I read that as the court is not changing its opinion. Its opinion is remaining the same. The court is saying that it has read the opinion, that Norbert doesn't apply. Norbert doesn't apply for these reasons. But when we look to the original opinion, which I think if the opinion doesn't change, the decision doesn't change. And you and I may disagree, Judge Southwick, I hope not, but we may, that decision and opinion in this case are the same thing. If they're not, I'm frankly in trouble. But if we look to the original opinion, and I think we look to page 156 of the record, and I'm sorry to read to you, I don't like doing that. But in this case, I think it's important. Two sentences. The first one is, the court finds the officers could legally stop, question, and ask Chastain for his identification without Miranda warning because they had reasonable suspicion he committed the offense of driving while intoxicated. ROA 156. It's not just, now that I'm thinking about it, it's not just, you know, watch out what you ask for. But it also then dovetails with the denial of the conditional plea. Had you conditionally plead this, pled this, it would just have been the original suppression, right? Yes. Did he deny the motion, the conditional plea, before you moved to reconsider? Because ultimately then you're stuck noticing an appeal of the JNC, and that would have both orders. And Judge Higginson, I don't remember the chronology because we knew he was going to deny the conditional plea before it was actually denied. We kind of knew that was coming in the works. And so I don't remember, I don't remember the chronology there of what actually happened. But I think what we have to do here is to look to the original order and see what the basis for the reasonable suspicion was. And I think when we look to that original order and we see the plain language, it comes down to driving while intoxicated. Now, I think the government will get up here and they'll emphasize to you that there are other places where you can find speeding or what's called erratic driving in there. But I think when you look to those citations in the original order, and I think it does require the close reading that this court is accustomed to doing. What's the case that says we don't look at it as a motion to reconsider denial adjustment? If we were to remand it for more clarifying fact finding, all he'd do is say, well, I told you he was speeding. Sure, Justice Higginson. And I think that there is no case, of course, I think it was a rhetorical question probably. No, it wasn't rhetorical because it seems to me you have to find a way to nullify the clarifying order. Well, if I can't get, I mean, the clarifying order says what it says and I can't get around that. And I don't have a case that says we don't consider the, there is no case out there that I'm aware of that says we don't consider the clarifying order. But what I'm saying is we consider the clarifying order in the whole. And it starts with, hey, I'm not changing anything here. The decision isn't changing, which I read to say the opinion isn't changing. You brought up Norbert in your motion because the motion initially is about Miranda. It's not so much about Terry, it's about Miranda. So they find a Terry stop and then we say, well, if you're going to find a Terry stop, then it's Norbert, okay? And they come in and say nothing's changing, Norbert doesn't apply, reasonable suspicion because of speeding. The statements, just because I know there were three different moments where the police extract statements. First is the Terry stop and he says I'm a felon, right? And that basically locks down the 922G. Then he's on the curb and he's arrested. Those were suppressed because they didn't Mirandize him. Yes. But then the third set, the next morning, those were admitted when he repeats everything because he was Mirandized. Correct. Okay. And you're just attacking the ones between Terry stop and curb. Yes, and what I'm really trying to say, Justice Higginson. It's judge. I'm sorry. That's all right. In state court it's justice. Yeah, I know, it just sounds informal. Justice one day. But the point of it is, is to say if the initial stop isn't good, then we don't get to any of the rest. And for me, the question is, is the initial stop good? If the court determines, as I think it should, that the district court found that the initial stop was based on DWI, I should prevail. If this court finds that the district court found the initial stop was because of erratic driving or speeding, I probably don't prevail. So let me tell you why I think I prevail if we come to, if this court reaches the conclusion that in fact the district court found that the initial stop was for DWI. And I think mostly that goes to Officer Bone's testimony. And I think you'll find that at ROA, like 339 through 360, and I may be off by a few pages. But basically what Bone says is that he goes to the old retirement center where he's working. He's living there, he's lived there several years. Usually very quiet, no one's there, he knows all the cars. He goes in, he sees a Mercedes backed into the visitor's spot with the lights on. Bone pulls into the apartment complex, the Mercedes follows him in. The Mercedes quickly turns around. Bone and the driver of the Mercedes make eye contact. The driver of the Mercedes leaves, goes next door to the poker club, isn't in there very long, then he drives away quickly. And Bone calls the Carrollton PD and says, hey, I'm afraid that somebody's after me. Bone, I'm not here to criticize Bone's decision, if he had a concern for his safety. Good on him for calling and not waiting for something to happen. But what I'm saying is that his testimony is about concerns for his safety. It's not about DWI. So when the police initially encountered Mr. Chasteen, they could have stopped him for speeding. They could have stopped him for, I don't know, whatever you want to call it, harassing or threatening or whatever it was to Officer Bone. But that's not what the district court found. The district court found that the stop was for DWI. And when you look at what the officers knew, they didn't even stop him for the gun, right? They'd seen the gun before Mr. Chasteen comes out. They don't stop him for the gun. The officers at the time thought the gun was legal. Of course it wasn't, but that's another matter. But the reasonable suspicions the district court found related to DWI. And we have to defer to the district court in almost all respects on facts. And so when they looked at the facts here, the district court looked at the facts, it made a determination that the officers stopped Mr. Chasteen for driving while intoxicated. It's my contention, of course, that the supplemental opinion, the motion for rehearing doesn't change that. The district court is saying it doesn't remain unchanged. I'm telling you why Norbert doesn't apply, but my substantive reasoning, my logic doesn't change. We could ask why the gun doesn't count, but I think we've been over that. Question, it's a threshold question, but you sound prepared enough, so even if it's not in the briefing, you may have thoughts. We have quite a body of law struggling with what I'll call stipulated trials. Okay. So once Judge, was it Judge Mazant? Correct. Once he decides to deny the unopposed conditional plea, isn't it on you to put into the stipulation that you've reserved your suppression issue? Because by stipulating everything but the interstate commerce component, you stipulate to the felon and the gun. And so, there's a little bit of difficulty in the law as to whether now you've preserved it, or it's harmless having stipulated to the gun, do you see? What's your thought on that? You know, it's frankly something I hadn't considered going into this, and I may try to get a 38-J letter on that to you. But my thought on that is that there was a specific agreement that allowed for the appeal to, I believe there was- But it wasn't in writing. You put it in writing for the conditional plea, but it doesn't end up in writing in the stipulated trial, right? You're right. It's an assumption everyone's expressing. It's what everyone is working- Do you think the district court had that assumption? Absolutely, yeah. The district court understood what was going on. It was a strategy that was sort of developed over time, and Judge Mazzan, you know, wasn't as involved as the attorneys, but I think everyone understood what was going on here. Yeah, okay, thank you. I don't have a better answer for that right now. But I think I've made my points. I don't want to belabor that. If there are no further questions, I'll reserve for a short rebuttal. You saved time for a rebuttal. Thank you, Your Honor. Mr. Taylor? On that first issue, is that where you are? The government isn't saying harmless, isn't saying waived, isn't saying we lack jurisdiction. Is that fair to say? That's right, Your Honor. I frankly hadn't considered the preservation issue. I agree with Mr. Chastain's counsel that I think the parties did deserve the right to take this appeal. Had we, to do it over again, maybe thought about that a little more clearly. Well, you weren't opposing the conditional plea. The district court just denied it. That's correct, Your Honor. Yes, sir. Okay, Sean Taylor for the government. This court can affirm based on just a fair, plain reading of the record. What we have here is really that the law is not in dispute, nor really are the material facts. There's just sort of some, I think, confusion about what those facts mean in the district court's findings. I want to pick up where we left off on the court's order denying the motion to reconsider, and opposing counsel cited part of that order. But I want to draw the court's attention to page 177 of that order. Not to, not to belabor the point, but I think this is important language that the district court wrote. So Chastain's argument is unpersuasive because it ignores the court's analysis regarding his initial stop. Unlike Morber, officers did not stop him without suspicion of wrongdoing. Officers did not approach him based on an unsubstantiated tip. And here's the important quote. Rather, officers observed him speeding and received a credible report from an off-duty officer about his erratic driving. This formed the basis for their initial stop. Officers observed him speeding and received a credible report from an off-duty officer about his erratic driving. And this formed the basis for the initial stop. The court then goes- What was the chronology? When was the motion reconsider filed that led to that clarification? It was about ten days after the court's order on the suppression issue. And then the order denying was on April 30th, 2021. Before the conditional plea effort. Right. So they just decided to move to reconsider and said, you're wrong. I think that opposing counsel filed the motion reconsider saying, hey, did you consider the Norbert case? I see. And the district court said, I did consider it, but it doesn't apply here. Because in Norbert, we have just a different issue about an anonymous tip. So here, the stop was not based on an anonymous tip. It was based on two officers observing Mr. Chasting speeding. And then one officer observing his erratic driving, which he communicated to the on-duty officer over the cell phone as he contemporaneously observed the erratic driving. Do you think it would be fair to say or not that if we look closely, my colleagues may certainly already have done that, at how the government argued this initially, you are relying on DWI, and then it shifts to speeding. Is that a fair assessment of why Judge Mazant wrote that first order the way he did? I think that's right, because the, you know, things are always sort of developed in hindsight. But I don't think at the time anyone was maybe thinking that this was an issue. I can point to some record testimony where the speeding was addressed at the suppression hearing. And it came out very clearly, both the Officer Bones' testimony on direct examination. He said, yeah, I saw him speeding. I've been trained in traffic. And I know it when I see it. And I communicated that to Officer Brewer, who then testified on direct that, I'm also a trained patrol officer. I saw this guy speed, or at least I saw the car speeding. So that really wasn't, I think, at the forefront of anyone's mind. The DWI is what led the officers to continue their investigation and develop reasonable suspicion to detain him and ask further questions. So the law in Terry is not in dispute. Obviously, the police have to have reasonable suspicion to detain someone for further questioning. The facts that are material to this court's analysis are really not in dispute. As I mentioned, on direct examination, two officers testified they saw this car speeding. I would like to correct what I think is some confusion that was brought up through the appellant's brief. On page 21 of the appellant's brief, it represents that Brewer, that was the second officer that actually approached the defendant on the scene, said that he didn't see the Chastain driving. And that was in the context of tying him to the car directly. But he unequivocally testified he saw the white Mercedes driving in excess of the speed limit. So then that's kind of the end of the inquiry there. And actually, right below that on page 21 of the appellant's brief, he says Bone did not see the defendant commit any other offense other than speeding. Well, of course, that's not required. I mean, speeding in and of itself is enough to make the initial stop. So I'm not sure that the court needs to really inquire any further. I agree that the court should give consideration to the court's second order, which clarifies the reasoning for the denial of motion to suppress, and pretty clearly, that he relies on a violation of traffic laws for making the initial stop. I think that's really pretty straightforward. If the court will read into that second order, that should be affirmed easily, Your Honor. Thank you for your time. If there are any other questions, I'll cease the time. Ehrlich for Rovello? Your Honor, if there are no questions, I think we all know what the issue here is. And I can answer any questions. But I don't have anything substantive to add to that. Don't tell my boss I said that. But this is, I think, a pretty clear issue. We appreciate that. Thank you. Thank you. Your case is under submission. Next case, Armadillo Hotel Group versus Harris.